## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TANYA FRAZER,

     Plaintiff,

v.                                  No. 1:23-cv-00473-KG-JHR

MARTIN O'MALLEY, *Commissioner of*
*Social Security,*

     Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON PLAINTIFF'S MOTION TO REMAND

     This matter is before the Court on Plaintiff Tanya Frazer's Opposed Motion to Reverse or Remand, in which she asks the Court to reverse a decision by the Social Security Administration denying her application for disability insurance benefits under Title II of the Social Security Act. *See* [Doc. 19]. The Commissioner of Social Security responded in opposition and Frazer timely replied. *See* [Docs. 25, 26]. Presiding District Judge Kenneth Gonzales referred the Motion to me to recommend a final disposition for this case. [Doc. 7]. Having considered the parties' briefs, the evidence, and the relevant law, I recommend that Frazer's Motion be granted in part and denied in part. Specifically, the Court should grant Frazer's request that this case be remanded because the Administration failed to consider the potentially limiting effects of her continuous glucose monitor but deny Frazer's request that benefits be immediately awarded.

### I.    BACKGROUND AND PROCEDURAL HISTORY

     This is the second time Frazer appealed an adverse decision by the Commissioner's Social Security Administration. In January 2018, Frazer applied for disability insurance benefits under Title II of the Social Security Act, claiming she became disabled in December 2017.

*Administrative Record* ("*AR*") at 144.[1]  The Administration denied her application on initial

consideration, on reconsideration, and in a decision by an Administrative Law Judge ("ALJ").

*AR* at 17, 54, 67.  The Administration's Appeals Council then rejected her appeal.[2]  *AR* at 6.

Frazer sued the Commissioner for judicial review in this Court, which ruled in her favor and

remanded the case to the Administration for further proceedings.  *AR* at 842–866; *Frazer v.*

*Kijakazi*, 1:20-cv-01147-GBW, 2022 WL 682661 (D.N.M. March 8, 2022).  The Administration

then held a new hearing before a different ALJ.  *AR* at 772–802.  The decision from that hearing

is now before this Court.

Among other conditions, Frazer suffers from diabetes mellitus.  She was diagnosed with

latent autoimmune diabetes mellitus as early as November 2016 and type I diabetes mellitus

since January 2017.  *AR* at 293.  For years, she has struggled to control her blood sugar which

often skyrockets and crashes throughout the day.  *See* [Doc. 19, pp. 4–7] (collecting instances in

the Administrative Record where Frazer showed objective signs or complained of very high or

low blood sugar).  She says that she experiences dizziness, tiredness, and brain fog during these

highs and lows.  *See, e.g., AR* at 562–63, 641.  Some evidence suggests that her extreme blood

sugar levels occur partly because she does not always take a dose of insulin before eating, a

practice called "bolusing," which would mitigate the effects of food on her blood sugar.  *See AR*

at 1834.  Records also suggest that Frazer was, for a time, not taking the correct doses of long-

acting insulin which may have also contributed to her extreme blood sugar.  *AR* at 1230, 1241.

---

[1] Document 11 comprises the sealed Certified Transcript of the Administrative Record.  The Court cites the Record's internal pagination rather than the CM/ECF document number and page.

[2] Claimants who are denied benefits by the Administration must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court.  *See* 42 U.S.C. § 405(g).  Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is final" enough for a district court to review.  20 C.F.R. § 422.210(a); *see also Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review.")

Frazer began using a continuous glucose monitor in January 2019 to record her blood sugar levels throughout the day and to alert her when the level is too high or low.  *AR* at 1209 (progress note dated January 17, 2019, stating she "started CGM around 3 days ago").  In February, her treatment providers outfitted her with an insulin pump which automatically administers insulin when her blood sugar is too high.  *AR* at 1174.  She reported to her physician that the monitor makes her anxious because of how often it alerts her of very high or low blood sugar.  *See AR* at 562–65.  Frazer's husband reported similar complaints, noting that "her glucose monitor sounds alarms at least a few times every night," interrupting their sleep and requiring him to bring her juice if her blood sugar is too low.  *AR* at 1034; *see also AR* at 1144–45 (noting that the monitor "beeps very loud" and wakes Frazer).  Medical records suggest that Frazer responded well to the monitor and insulin pump, but she stated during her hearing that it has not improved her overall condition.  *See AR* at 784, 1145.

During her application process, several medical professionals opined on Frazer's overall condition and her ability to work.  Her primary care physician, Dr. Elaine Papafrangos, M.D., submitted two opinions.  In a letter dated March 2020, Dr. Papafrangos asserted that Frazer's "several chronic medical conditions . . . have rendered her disabled from being able to work." *AR* at 688.  The letter primarily attributed this to Frazer's diabetes, describing her as a "'brittle diabetic' with blood sugars that range from extremely high to critically low within a short span of time." *Id.*  She noted that Frazer was being treated by an endocrinologist and was using an insulin pump along with a continuous glucose monitor, but despite being "a very compliant and conscientious patient," Frazer experienced "low blood sugars numerous times throughout the day and night[.]" *Id.*  Dr. Papafrangos also said that Frazer had been "noted to be confused, drowsy and cognitively impaired at times when her blood sugars are very low." *Id.*  Dr. Papafrangos

reasserted these claims in her Medical Source Statement of August 2022.  *AR* at 1802–06.  She said that Frazer experiences "poor concentration" and listed high blood sugars as a "clinical finding and objective sign" which corresponded to her symptoms.  *AR* at 1802 ("High A1c usually 8–10.5").[3]  She also noted that Frazer's continuous glucose monitor often woke her and her medications "can cause drowsiness" and "dizziness[.]"  *Id.*  When asked if Frazer's "experience of pain or other symptoms" was "severe enough to interfere with attention and concentration needed to perform even simple work tasks," Dr. Papafrangos said they would interfere "[c]onstantly," and that Frazer was "[i]ncapable of even 'low stress' jobs" because of "pain and concentration issues worsened by stress[.]"  *AR* at 1803.  Overall, in both her letter and Medical Source Statement, Dr. Papafrangos opined that Frazer's ability to work was highly impaired.

Other medical professionals disagreed.  In May 2018, Dr. Moon Yoon, M.D., performed a consultative exam of Frazer to assess her physical capacity to work.  *See AR* at 443–450.  Although Frazer endorsed subjective symptoms such as blurry vision and joint pains, Dr. Yoon observed that she "demonstrate[d] no objective physical exam findings of impairment."  *See AR* at 446, 448.  Dr. Yoon also found that Frazer's mental status was normal, except that she could only "recall one out of three words at five minutes."  *AR* at 445–46.  Based on this and other observations, Dr. Yoon found that Frazer could stand, walk, and sit for eight hours in a workday, carry and lift 50 pounds occasionally and 20 pounds frequently, and frequently perform various tasks with her hands and body, all without assistive devices to ambulate.  *AR* at 448.  Dr. Yoon thus found few, if any, physical limitations on Frazer's ability to work.  The same month, Dr. John P. Owen, Ph.D., performed a consultative exam to assess Frazer's mental limitations.  *See*

---

[3] A1c, more formally called HbA$_{1c}$, is a measurement of glycosolated hemoglobin which reflects blood glucose levels over the preceding three months.  *Merck Manual* 1254–55 (20th ed. 2018).

*AR* at 451–56.  Frazer scored 30/30 on a Mini-Mental State Examination, meaning that she was able to answer all questions and obey all instructions given to her.[4]  *See AR* at 452, 454.  After an interview and reviewing Frazer's medical and employment history, Dr. Owen found that "depending on her blood sugar level, [Frazer] has fluctuation in terms of her cognitive abilities, ability to concentrate, persist at tasks and adapt to change which is noted in the statement of abilities."  *AR* at 454.  His opinion of her abilities, however, was positive overall, finding that she would have no difficulty with most kinds of mental tasks.  *AR* at 454–55.  In sum, Frazer's consultative exam results mostly suggested Frazer could work.

Frazer's second hearing with the Administration was in March 2023.  *See AR* at 772–802. During the hearing, Frazer discussed the ways in which her diabetic symptoms made it difficult to live and work.  *See AR* at 780–792.  She described her blood sugar level as "very hard to control" with many "high and lows[.]"  *AR* at 781.  She stated that she experiences blood sugar spikes "three to four times a day" and that they cause her to experience blurred vision, tiredness, nausea, frequent urination, "pins and needles" in her feet, and "severe headache."  *AR* at 782. Sharp blood sugar drops also occurred "four to five times a week."  *Id.*  Frazer said she could not speak or concentrate during blood sugar crashes, "like, I can't function," and the crashes were unpredictable.  *AR* at 783.  She also talked about how her blood sugar monitor "just starts going off and -- and glaring, like a loud alarm" every time her blood sugar craters or spikes.  *AR* at 784.

After Frazer's testimony, a vocational expert testified about work available to Frazer. *See AR* at 792–800.  The ALJ asked the expert whether someone with a hypothetical residual

---

[4] A "Mini-Mental State Examination" assesses a patient's mental capacities in terms of orientation, registration, attention and calculation, recall, and language.  *See AR* at 452.  Patients are asked questions and given instructions related to each of these capacities, such as questions about the date and time and their current location, and to perform tasks such as recalling three objects the examiner asked them to memorize and to write a sentence.  *AR* at 452.  The score is based on how many questions and tasks the patient correctly answers and performs.

functional capacity ("RFC") – identical to the RFC the ALJ would later find for Frazer – could still work jobs available to her in the national economy.[5]  *AR* at 754, 793–96.  The expert answered that there would be work available to such a person and listed several professions.  *AR* at 795–96.  Frazer's lawyer asked the expert whether someone with a slightly more limited RFC would be able to work.  *AR* at 797–800.  Crucially, Frazer's lawyer asked if a person with the same hypothetical RFC could work but with the caveat that "due to blood sugar spikes or craters, the hypothetical person's blood glucose monitor will suddenly ring out an alarm twice a day disturbing other workers."  *AR* at 798.  The expert testified that this would be work preclusive.  *Id.*  The hearing ended after the vocational expert's testimony.  *AR* at 802.

On March 31, 2023, the ALJ issued a new decision denying benefits.  *AR* at 746–771.  This appeal followed in June 2023.  [Doc. 1].  Frazer moved in November 2023 to remand the case to the Administration and for the Court to order an immediate award of benefits.  [Doc. 19].  The Commissioner responded in opposition in February 2024 and Frazer replied in March, completing briefing.  *See* [Docs. 25, 26, 28].  The matter is ripe for decision.

## II.  THE COMMISSIONER'S FINAL DECISION

The ALJ's written decision followed the standard five-step sequential analysis for determining whether an applicant is disabled.[6]  *See AR* at 751–764.  After determining that Frazer met the insured status requirements through March 2023, the ALJ found at step one that Frazer had not engaged in substantial gainful activity since her alleged disability onset date.  *AR* at 751.  At step two, he found that Frazer was severely impaired by cervical, thoracic, and lumbrosacral spondylosis; type I diabetes mellitus with diabetic neuropathy; depression; anxiety;

---

[5] A person's RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).

[6] The five-step sequential analysis is prescribed by 20 C.F.R. § 404.1520(a)(4).  A short summary can be found in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

and post-traumatic stress disorder.  *Id.*  At step three, the ALJ found that Frazer's impairments

did not meet or medically equal an impairment under the listings at 20 C.F.R. Part 404, Subpart

P, Appendix 1, and thus she was not automatically deemed disabled.  *AR* at 752.

The ALJ then determined Frazer's RFC, i.e., the most Frazer could do despite her

limitations.  *AR* at 754; *see also* 20 C.F.R. § 404.1545(a)(1) (defining "residual functional

capacity").  The ALJ found that Frazer was able to do the following:

> perform light work as defined in 20 CFR 404.1567(b) except that she is capable of
> occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying
> ten pounds, standing and/or walking for about six hours in an eight-hour workday,
> and sitting for about six hours in an eight-hour workday, all with normal breaks.
> She is limited to frequent exposure to extreme cold, unprotected heights, dangerous
> machinery, and moving machinery.  She can understand, carry out, and remember
> simple and detailed, but not complex, instructions and make commensurate work-
> related decisions, respond appropriately to supervision, coworkers, and work
> situations, deal with routine changes in work settings, maintain concentration
> persistence, and pace for up to and including two hours at a time with normal breaks
> throughout a normal workday.  She is limited to occasional interaction with
> coworkers, supervisors, and the general public.

*AR* at 754.  To support these findings, the ALJ discussed Frazer's self-reported symptoms and

limitations; notes and observations about Frazer from her medical records; and medical

professional opinions.

The ALJ found both of Dr. Papafrangos's opinions "not persuasive."  *AR* at 762.

Discussing the March 2020 letter, the ALJ acknowledged Dr. Papafrangos's assertions that

Frazer's "chronic medical conditions" had "disabled her from being able to work" and that "her

ability to function reliably in any job is greatly reduced[.]"  *AR* at 761 (quoting *AR* at 688)

(internal quotation marks omitted).  He disregarded these claims because "[s]tatements about

whether you are able to work are inherently neither valuable nor persuasive[.]"  *AR* at 761.  He

also found unpersuasive Dr. Papafrangos's claim that low blood sugars caused Frazer "to be

confused, drowsy, and cognitively impaired[.]"  *Id.*  The ALJ found no support for the claims in

Dr. Papafrangos's notes, in part because Frazer's "blood sugar levels were high when she visited Dr. Papafrangos" so she would not have observed Frazer experiencing low blood sugar symptoms. *See id.* The ALJ also found Dr. Papafrangos's observation inconsistent with Frazer's 30/30 score on the Mini-Mental State Examination and improvements in Frazer's blood sugar levels. *AR* at 762. For these and other reasons, the ALJ found the March 2020 statement unpersuasive. *Id.*

Dr. Papafrangos's August 2022 opinion received similar treatment. Again, the ALJ acknowledged Dr. Papafrangos's assessment of Frazer's ability to work but, even though it was more detailed than before, he found the assessment unpersuasive because it was "extreme and overly restrictive" when compared to the rest of the evidence. *Id.* He noted that the August 2022 opinion seemed to be based on subjective complaints which were discussed only at the corresponding visit and "none of the treatment records from Dr. Papafrangos show abnormal objective physical or mental exam findings." *Id.* In the ALJ's view, "[i]t did not appear Dr. Papafrangos performed detailed exams but rather managed [Frazer]'s medication." *Id.* The ALJ also relied on mostly positive findings from the consultative exams which were inconsistent with the more extreme limitations suggested by Dr. Papafrangos. *See id.* The August 2022 statement was thus disregarded as well.

At step four of the sequential evaluation, the ALJ found that Frazer was unable to return to her past relevant work. *AR* at 762–63. At step five, however, the ALJ identified three occupations from the Dictionary of Occupational Titles with vocational demands consistent with Frazer's RFC. *AR* at 763–64. The jobs were the same ones suggested by the vocational expert at Frazer's March 2023 hearing and totaled  304,000 positions across the United States. *AR* at 763–

64. The ALJ thus determined that Frazer could perform other work available to her in the national economy and so was not disabled.  *AR* at 764.

## III.   <u>STANDARD OF REVIEW</u>

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied."  *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)).  A deficiency in either area is grounds for remand.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  The Commissioner's findings are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance.  *See id.*; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision is not based on substantial evidence if it is overwhelmed by other record evidence.  *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

## IV.   <u>ISSUES PRESENTED</u>

(a) Whether the Administration's ALJ erred by failing to consider the limiting effects of Frazer's continuous glucose monitor on her ability to work.

(b) Whether the Administration's ALJ gave enough consideration to Dr. Papafrangos's medical source statements.

(c) Whether the Administration should be ordered to award benefits to Frazer without further administrative proceedings.

## V.   <u>ANALYSIS</u>

> a.   <u>The ALJ Failed to Consider the Limiting Effects of Frazer's Continuous Glucose Monitor</u>

>> i.   *Parties' Arguments*

Frazer's first argument for remand is that the ALJ erred by ignoring evidence that her continuous glucose monitor limits her ability to work.  [Doc. 19, pp. 20–21].  Frazer's continuous glucose monitor tracks her blood sugar all day and alerts her when her blood sugar is too high or too low by sounding an alarm.  *Id.* at 2.  Frazer told her primary care physician, Dr. Papafrangos, that this alarm is loud enough to wake her when she is sleeping and testified to the same effect during her second hearing.  *Id.* at  3, 5, 10 n.11 (citing *AR* at 641–48, 784, 1148).  Frazer also testified that her blood sugar "spikes" three to four times each day and "craters" four to five times each week.  [Doc. 19, p. 3] (citing *AR* at 782).  From these and other facts, Frazer says that the ALJ should have inferred that her continuous glucose monitor alarm would loudly sound off several times a day which would disturb coworkers, and he should have included this as a limitation in Frazer's RFC.  *See* [Doc. 19, p. 20–21].  Additionally, Frazer argues, because the vocational expert at Frazer's hearing affirmed that such a limitation would preclude someone like Frazer from working, the failure to account for the continuous glucose monitor alarm was harmful error.  *Id.* at 21 (citing *AR* at 798).

The Commissioner argues that the ALJ correctly assessed Frazer's RFC and that Frazer did not carry her burden to show that her continuous glucose monitor limited her ability to work.  *See* [Doc. 25, pp. 9–14].  An ALJ's findings need only to be supported by substantial evidence, and the ALJ's RFC findings were supported by an extensive assessment of the record.  *Id.* at 9–11.  Further, the burden to prove the RFC falls solely on the applicant.  *Id.* at 9 (citing *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg.

51,153–155 (Aug. 26, 2003); 20 C.F.R. § 404.1512(a)).  In the Commissioner's view, Frazer did

not present enough evidence that the continuous glucose monitor limited her ability to work and

the ALJ was not required to add a limitation he believed was unsupported.  [Doc. 25, pp. 11–14].

Frazer's only evidence of the alarm's volume is her own statements; none of the medical

providers suggested it would limit her ability to work; and Frazer has not shown the volume

cannot be adjusted, yet the website for Frazer's brand of glucose monitor says it can be.  *Id.*

at 12–14.  Therefore, the ALJ was reasonable not to discuss the continuous glucose monitor and

the RFC was without error.

### ii.   *Relevant Law*

Frazer carries the overall burden to prove she is disabled.  42 U.S.C. § 423(d)(5)(A); 20

C.F.R. § 1512(a)(1).  Disability benefits applicants must show that they "have a medically

determinable physical or mental impairment[]" by producing "objective medical evidence from

an acceptable medical source."  20 C.F.R. § 404.1521.  An applicant's own statements cannot, on

their own, establish such an impairment, nor prove disability generally.  *See* 42 U.S.C.

§ 423(d)(5)(A); 20 C.F.R. § 404.1521.  But once a severe impairment is established, the

Administration must consider all the evidence in the record to determine whether the applicant's

impairments disable her from working.  *See* 20 C.F.R. § 404.1520(a)(3), (4).  The Administration

must also explain how it considered the evidence so that courts can review the decision.  *See T-*

*Mobile South, LLC v. City of Roswell, Ga.*, 574 U.S. 293, 301 (2015).  This does not require

ALJs to discuss every piece of evidence, but they must discuss the uncontroverted evidence on

which they choose not to rely and any significantly probative evidence they reject.  *Clifton v.*

*Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir.

2009).

Additionally, when an applicant claims that symptoms of her impairments limit her ability to work, the ALJ must evaluate those symptoms in a two-step analysis.  *See* Social Security Ruling ("SSR") 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims* (Mar. 28, 2016).[7]  First, he must determine that the applicant "has a severe medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *The two-step process*.  "Symptoms" are the applicant's "own description of [her] physical or mental impairment."  20 C.F.R. § 404.1502(f).  Once the impairment is established, the ALJ evaluates the intensity and persistence of the applicant's alleged symptoms.  SSR 16-3p at *The two-step process*.  Apparent incongruity between the alleged intensity of a symptom and the objective evidence does not mean the ALJ can disregard the symptom.  *See id.*

> For example, if an individual has a medically determinable impairment established by a knee x-ray showing mild degenerative changes and he or she alleges extreme pain that limits his or her ability to stand and walk, we will find that individual has a medically determinable impairment that could reasonably be expected to produce the symptom of pain.  We will proceed to step two of the two-step process, even though the level of pain an individual alleges may seem out of proportion with the objective medical evidence.

*Id.*

### iii.  *Discussion*

Frazer's case is unusual because her allegedly disabling "symptom" is not a direct biological consequence of her diabetes but a workplace consequence of how her diabetes is treated.  Frazer's use of a continuous glucose monitor introduces an unpredictable but frequent noise disruption to her workplace.  The ALJ heard Frazer testify to the likelihood and nature of the disruption alongside the vocational expert's opinion that such a disruption would preclude

---

[7] All SSRs can be accessed free of charge at https://www.ssa.gov/OP_Home/rulings/rulings.html.  Pin citations to SSRs refer to headings in the SSR because the Administration does not paginate its rulings.

work. Yet, the ALJ did not incorporate the expert's opinion and did not explain why.  This was legal error.  For that reason, this case should be remanded on the limited grounds that the Administration must consider and explain whether and to what degree Frazer's continuous glucose monitor limits her ability to work.

The existence and severity of Frazer's type I diabetes mellitus is undisputed.  *See AR* at 751.  Long swaths of the ALJ's decision describe and weigh evidence for and against placing limitations on Frazer's ability to work due to diabetic symptoms.  *See AR* at 755–59 (discussing medical records reflecting Frazer's treatment for diabetes).  For the symptoms discussed, the ALJ correctly applied SSR 16-3p by finding Frazer suffered a severe medically determinable impairment which would reasonably cause her alleged symptoms, then determining whether the intensity and persistence Frazer alleged was consistent with the totality of the evidence.  Those parts of the decision are plainly supported by substantial evidence and should not be touched by this Court.

Where the ALJ erred was disregarding Frazer's continuous glucose monitor.  By the time she had her second hearing, Frazer had been using the monitor to treat her diabetes for four years.  *See AR* at 1209.  Frazer complained to her primary care physician about the noise the monitor made; her husband complained as well and said it interrupted their sleep; and Dr. Papafrangos confirmed that she believed it was loud.  *AR* at 562, 565, 1034, 1145.  When prompted to talk about it at her hearing, Frazer complained again about how frequent and loud the alarm was.  *AR* at 783–84.  This evidence should have established that the noise associated with the monitor was a potential limiting side-effect of Frazer's treatment.  Frazer also signaled her belief that the monitor limited her ability to work by asking the vocational expert, through counsel, a hypothetical question about it.  *AR* at 798.  The expert's answer established that, if the

alarm was as loud as she claimed, it would prevent her from working.  *See id.*  ALJs must address "the 'uncontroverted evidence' the ALJ chooses not to rely upon" and, in the second step of the two-step process, evaluate whether a limiting symptom is as intense and frequent as the applicant claims.  *Wall*, 561 F.3d at 1067; SSR 16-3p at *The two-step process*.  The ALJ may not have been required to find that Frazer was disabled, but he erred by wholly ignoring evidence of a potential limitation.  Remand is thus proper.

The sound of an alarm attached to a medical device may not be a "symptom" in that term's common usage, but it is reasonably encompassed by the Administration's definition – "your own description of your physical or mental impairment."  *See* 20 C.F.R. § 404.1502(f).  In her hearing, Frazer described her glucose monitor, and its alarm, as an aspect of her diabetes. *See AR* at 783–84.  Further, in the context of sedentary work, the Administration has recognized that medical devices can seriously impair an individual's ability to work.  *See* SSR 96-9p, *Policy Interpretation Ruling, Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work* (July 2, 1996), at *Medically required hand-held assistive device* (discussing when and how ALJs should find that a person's RFC is limited by their use of an ambulatory device).  A finding that Frazer's glucose monitor alarm could not matter for her disability status would arbitrarily set aside an observable side-effect of her impairment simply because it arises from her treatment. The limiting effects of Frazer's glucose monitor thus should have been considered.

The Administration's counterarguments are unavailing.  The Administration cites several Tenth Circuit cases to argue that the ALJ did not need to assign limitations based on the glucose monitor or ask the vocational expert questions about it.  [Doc. 25, pp. 12–13].  Those cases are inapposite.  In each, the Tenth Circuit held that an ALJ can properly rely on the opinion of a

vocational expert when the expert opines on a hypothetical RFC which mirrors the applicant's

actual, properly determined RFC.  *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995)

("The ALJ was not required to accept the answer to a hypothetical question that included

limitations claimed by plaintiff but not accepted by the ALJ as supported by the record");

*Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000); *Smith v. Colvin*, 821 F.3d 1264, 1270

(10th Cir. 2016) ("The [ALJ] had to ask only about the effect of those limitations ultimately

assessed; the judge did not need to ask about the effect of limitations that he didn't believe

applied").  But the problem in this case is that the hypothetical RFC on which the ALJ relied

ignored uncontroverted evidence of a potential limitation, which would have affected the RFC,

as the expert said.  Such legal error is a recognized basis on which to reverse and remand the

Administration's decisions.  *See, e.g., Grogan v. Barnhart*, 399 F.3d 1257, 1265–66 (10th Cir.

2005) (reversing and remanding the Administration's denial of benefits because the ALJ failed to

acknowledge evidence which would have supported a finding of disability).  Cases about

hypotheticals based on properly reached RFCs are thus inapplicable.

   Nor should the Court be persuaded by the Administration's arguments about Frazer's

burden to prove disability.  As noted above, Frazer bears the burden to prove she is disabled.

42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 1512(a)(1).  But that general burden does not translate

into the specific burdens the Administration seeks to put on her – that is, to prove not only that

her glucose monitor alarm is loud and frequent, but that its volume cannot be changed and that

changing it would not interfere with Frazer's ability to use it.  *See* [Doc. 25, pp. 13–14].  Further,

the fact that Frazer must prove her disability to the ALJ does not change the ALJ's responsibility

to consider the evidence before him, including the evidence weighing in favor of a disability

finding.  *See* 20 C.F.R. § 404.1520(a)(3); *Clifton*, 79 F.3d at 1010; SSR 16-3p at *Consideration*

*of Other Evidence* ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record").  On remand, the ALJ may or may not find that Frazer produced enough evidence to show that her glucose monitor prevents her from working – but he must at least address the evidence that is presented.

      b.  <u>The ALJ Properly Considered Dr. Papafrangos's Medical Opinions</u>

          i.  *Parties' Arguments*

Frazer argues that the ALJ did not properly consider Dr. Papafrangos's medical source statements because the assessment of them only considered evidence which undercut the doctor's conclusions and none of the evidence which supported them.  [Doc. 19, pp. 23–24].  She gives two examples.  First, she says the ALJ did not address the "pattern of erratic blood sugar levels despite the insulin pump [and continuous glucose monitor]," which would have supported Dr. Papafrangos's conclusions about the disabling effects of Frazer's diabetes.  *See id.* at 23. Second, she says the ALJ was wrong to find that "none of the treatment records from Dr. Papagrangos [*sic*] show abnormal objective physical or mental exam findings" because this observation "ignore[d] evidence from [the] consultative examiner, Dr. Yoon, that Plaintiff could recall only 1/3 words after five minutes."  *Id.* at 24 (citing *AR* at 446, 762).  ALJs must consider the supportability and consistency of medical source statements compared to the rest of the evidence and cannot "cherry-pick" evidence to support the ALJ's desired conclusion.  [Doc. 19, pp. 23–24] (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).  Frazer says the ALJ violated these rules, and this case must be remanded to fix it.  [Doc. 19, p. 24].

The Commissioner argues that Frazer wants the Court to reweigh the evidence.  He agrees that ALJs must articulate their assessments of medical opinions based on several factors,

including how well they are supported by the evidence and their consistency with other sources. [Doc. 25, p. 15] (citing 20 C.F.R. § 404.1520c(b)).  But these requirements are satisfied if the ALJ's discussion would "allow a subsequent reviewer . . . to trace the path of [the ALJ's] reasoning."  [Doc. 25, p. 15 ] (citing *Revisions to the Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844, 5,858 (Jan. 18, 2017)); quoting *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650 at *5 (10th Cir. Oct. 8, 2022).  The Commissioner says the ALJ satisfied these requirements by comparing Dr. Papafrangos's opinions with treatment notes and with the other opinions and evidence in the record, even adding limitations to Frazer's RFC which accounted for some of the symptoms Dr. Papafrangos described.  *See* [Doc. 25, pp. 15–18].  The Commissioner also points out that, insofar as Dr. Papafrangos opined directly on Frazer's ability to work, her statements were inherently unpersuasive and did not need to be addressed.  *Id.* at 15 (citing 20 C.F.R. § 404.1520b(c), (c)(3)).  The Commissioner thus asserts that the ALJ did not err and there is no reason for remand.

ii.  *Relevant Law*

The Administration has broad discretion when it weighs medical opinions.  Although they must consider and discuss each medical opinion in the record, ALJs will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the applicant's] medical sources."  20 C.F.R. § 404.1520c(a).  Instead, medical opinions are all weighed according to the same factors, the most important of which are supportability and consistency.  *Id.* at § 404.1520c(b)(2).  Opinions are well-supported when "the objective medical evidence and supporting explanations presented by a medical source . . . support his or her medical opinion(s)[.]"  *Id.* at § 404.1520c(c)(1).  Consistency refers to whether the opinion is consistent "with the evidence from other medical sources and nonmedical

sources[.]" *Id.* at § 404.1520c(c)(2).  When different opinions contradict each other, ALJs have

discretion to resolve inconsistencies based on the information they have.  *See id.* at

§ 404.1520b(b).  And, like the rest of the decision, the ALJ's findings on medical opinions are

conclusive if supported by substantial evidence and explained well enough for a Court to review.

42 U.S.C. § 405(g); *T-Mobile South, LLC*, 574 U.S. at 301.  A medical source's opinion on

whether the applicant is disabled, however, is inherently unpersuasive and does not need to be

addressed at all.  20 C.F.R. § 404.1520b(c)(3); *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905–06

(10th Cir. 2023).

   iii. *Discussion*

   The ALJ's assessment of Dr. Papafrangos's opinions was proper.  The ALJ was required

merely to consider and articulate the persuasiveness of Dr. Papafrangos's opinions according to

the factors listed at 20 C.F.R. § 404.1520c(c), focusing most significantly on the strength of the

opinions' objective evidentiary support and their consistency with evidence from other sources.

*See* 20 C.F.R. § 404.1520c(b)(2), (c).  This is exactly what the ALJ did.  He described each

opinion from Dr. Papafrangos in detail.  *See AR* at 761–62.  He then explained why he found

little objective support for Dr. Papafrangos's suggestions.  *AR* at 761–62.  For example, he noted

that Dr. Papafrangos claimed Frazer experienced subjective symptoms like brain fog and chronic

pain despite having never observed Frazer experience these symptoms and citing no instances in

her treatment records to support the claims.  *AR* at 761–62.  The ALJ also pointed out that Dr.

Papafrangos's opinions were inconsistent with those of the consultative examiners, who opinions

the ALJ found better supported by record evidence.  *AR* at 761–62.  By analyzing the

supportability and consistency of Dr. Papafrangos's opinions, the ALJ satisfied section

404.1520c, and because his findings are grounded in more than a scintilla of evidence, they are conclusive. *See* 42 U.S.C. § 405(g).

The specific examples Frazer cites as "errors" are not errors. First, Frazer says that the ALJ should have discussed the records of Frazer's erratic blood sugar levels alongside Dr. Papafrangos's opinion and found them supportive. [Doc. 19, p. 23]. Although it is true that the ALJ did not find that Frazer's erratic blood sugar levels supported Dr. Papafrangos's opinions, the ALJ discussed Frazer's blood sugar levels elsewhere alongside evidence suggesting that Frazer was not consistently seeing a doctor about her diabetes. *See AR* at 757–58. This shows that the ALJ did not outright ignore this information, merely that he found other opinions more persuasive. Further, Dr. Papafrangos's own statements did not cite the records Frazer says the ALJ should have relied upon. *See AR* at 688, 761–62, 1802–06. From this, the ALJ seemed to infer that Dr. Papafrangos's claims were grounded in Frazer's subjective complaints, not the objective medical evidence. *AR* at 762. This was an acceptable reason for discounting Dr. Papafrangos's views. And Frazer's argument about Dr. Yoon's report is no more convincing. Again, it is true that Dr. Yoon observed Frazer remember only one of three words five minutes after Dr. Yoon told her the words. *AR* at 446. But the fact that this this finding would support Dr. Papafrangos's opinions did not then obligate the ALJ to weigh Dr. Papafrangos's statements more heavily than other medical opinions which he found more persuasive. Given that the ALJ considered the opinions in detail and cited specific evidence to explain why he found them unpersuasive, there was no error. To reach a different conclusion, the Court would have to reweigh the evidence, which it is forbidden to do. *Lax*, 489 F.3d at 1084. The Court thus should not remand on this ground.

c.  Remand for Immediate Award of Benefits

i.  *Parties' Arguments*

In addition to her arguments on the merits, Frazer asks that benefits be awarded without further administrative proceedings.  [Doc. 19, p. 21].  She points out that she first applied for benefits over six years ago.  *Id.* at 22.  She also argues that additional fact-finding is unnecessary if the Court remands based on the continuous glucose monitor argument because the underlying facts supporting it are undisputed.  *Id.* at 22–23.  Further fact finding would also be unnecessary because Frazer's date last insured was in March 2023, so any further fact-finding would be limited to information about Frazer's condition before that date.  *Id.* at 23.

The Commissioner argues, however, that more fact-finding is needed.  [Doc. 25, p. 18–19].  The Commissioner points out that, despite the length of the proceedings thus far, "no doctor concluded [Frazer] required a work-related limitation related to glucose monitor alarms" and reasserts that there were no findings on whether the "blood sugar alarms could be controlled so as not to disturb coworkers."  *Id.* at 19.  Thus, if the Court remands, the Commissioner asks that it be for additional fact finding on these issues.

ii.  *Discussion*

If the Court remands this case as recommended, it should not order an immediate award of benefits.  When an agency decision is reversed, courts have discretion to remand for further proceedings or for an immediate award of benefits.  *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).  Generally, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  To decide whether to order further proceedings or the immediate award of benefits, courts

20

generally consider how long the proceedings have gone on and whether additional fact-finding would be useful.  *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

More fact-finding would not only be useful – it is necessary.  The basis for the recommended remand is that the Administration needs to determine whether the alarm on Frazer's continuous glucose monitor sounds off so frequently and loudly that it would disturb coworkers and whether the volume can be changed without hindering its function.  *See above.* This is a fact question for the Administration to resolve by considering the evidence available to it and, if needed, seeking more evidence from Frazer.  Further, if the question of disability turns on the limiting effects of Frazer's glucose monitor, the Administration needs to consider whether Frazer's disability onset date was in January 2019 when she started using it, rather than her alleged onset date in December 2017.  *See AR* at 751.  An immediate award thus risks over-awarding Frazer by a year's worth of benefits.  The Court should thus deny Frazer's request for an immediate award.

## VI.    <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, the undersigned Magistrate Judge recommends that that Plaintiff Tanya Frazer's Motion to Reverse or Remand, [Doc. 19], be **granted** as to the request for remand based on her argument that the Administrative Law Judge improperly ignored evidence that her continuous glucose monitor limits her ability to work and **denied** as to the request that the Court order immediate award of benefits.  On that limited basis, the Commissioner's Final Decision should be **reversed** and this case should be **remanded.**

_____

Hon. Jerry H. Ritter
United States Magistrate Judge

21

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**